ANGELA M. SPIVEY (*pro hac vice*)
ANDREW PHILLIPS (*pro hac vice*)
LARA TUMEH (SBN 304447)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, GA  30309-3424
Telephone:  (404) 881-7000
Facsimile:   (404) 881-7777
Email:     angela.spivey@alston.com
           drew.phillips@alston.com
           lara.tumeh@alston.com

RACHEL E. K. LOWE (SBN 246361)
**ALSTON & BIRD LLP**
333 South Hope Street
Sixteenth Floor
Los Angeles, CA  90071
Telephone:  (213) 576-1000
Facsimile:   (213) 576-1100
E-mail:  rachel.lowe@alston.com

Attorneys for Defendant
**CONAGRA BRANDS, INC.,**
**Formerly known as ConAgra Foods, Inc.**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BEASLEY, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>CONAGRA BRANDS INC.,<br><br>        Defendant. | Case No.:  3:18-cv-06730-SI<br><br>Assigned to the Hon. Susan Illston<br>Courtroom 1<br><br>**DEFENDANT CONAGRA BRANDS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY, OR ALTERNATIVELY, DISMISS FIRST AMENDED COMPLAINT**<br><br>[Filed concurrently with Request for Judicial Notice; and Declaration of Lara Tumeh]<br><br>Date:         March 22, 2019<br>Time:        9:00 a.m.<br>Courtroom.:    1<br><br>Complaint Filed:    November 6, 2018 |

**TABLE OF CONTENTS**

Page(s)

I.      INTRODUCTION ........................................................................................................1

II.     ARGUMENT AND CITATION TO AUTHORITY...........................................................2

        A.      THE COURT SHOULD STAY THE CASE PENDING THE NINTH
                CIRCUIT'S DECISION IN *MCGEE V. S-L SNACKS NATIONAL, LLC*.................2

        B.      CONFLICT PREEMPTION BARS THE USE CLAIMS. ......................................2

        C.      THE FIRST CAUSE OF ACTION IS SIMILARLY BARRED BY
                CALIFORNIA'S SAFE HARBOR DOCTRINE. ......................................................7

        D.      THE FIRST CAUSE OF ACTION ADDITIONALLY FAILS BECAUSE
                PHO USE CANNOT BE UNLAWFUL OR UNFAIR AS A MATTER OF
                LAW. ........................................................................................................9

        E.      THE SECOND CAUSE OF ACTION FOR BREACH OF IMPLIED
                WARRANTY OF MERCHANTABILITY CLAIM FAILS. ...................................9

        F.      THE UCL AND FAL CLAIMS IN THE FIRST, THIRD, AND FOURTH
                CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE THEY
                DUPLICATE LEGAL CLAIMS ASSERTING AN ADEQUATE REMEDY.........10

        G.      PLAINTIFF LACKS STATUTORY STANDING TO BRING HIS THIRD,
                FOURTH, AND SIXTH CAUSES OF ACTION—THE UCL, FAL, AND
                CLRA LABELING CLAIMS...............................................................................11

        H.      PLAINTIFF FAILS TO PLEAD TIMELY CLAIMS UNDER RULES
                12(B)(6) AND 9(B)..........................................................................................13

        I.      THE ENTIRE FAC SHOULD BE DISMISSED OR STAYED UNDER THE
                DOCTRINE OF PRIMARY JURISDICTION.........................................................15

III.    CONCLUSION.............................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Altmann v. Republic of Aus.*,
317 F.3d 954 (9th Cir. 2002) ..............................................................................................5

*Backus v. Biscomerica Corp.*,
No. 16-cv-03916-HSG, 2017 U.S. Dist. LEXIS 44832 (N.D. Cal. Mar. 27, 2017) .................4

*Backus v. ConAgra Foods, Inc.*,
No. C 16-00454 WHA, 2016 U.S. Dist. LEXIS 92355 (N.D. Cal. July 15, 2016) ..................4

*Backus v. Gen. Mills*,
122 F. Supp. 3d 909, 927 (N.D. Cal. 2015) ..............................................................................4

*Backus v. Gen. Mills, Inc.*,
No. 15-cv-01964-WHO, 2018 U.S. Dist. LEXIS 208198
(N.D. Cal. Dec. 10, 2018) ..............................................................................................3

*Backus v. Nestlé USA, Inc.*,
167 F. Supp. 3d 1068, 1074 (N.D. Cal. 2016) ..........................................................................4

*Beasley v. Lucky Stores, Inc.*,
No. 4:18-cv-07144 (N.D. Cal. Nov. 26, 2018) ....................................................................12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ..............................................................................................8

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) ..............................................................................................15

*Clemens v DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ..............................................................................................10

*Davis v. HSBC Bank*,
691 F.3d 1152 (9th Cir. 2012) ..............................................................................................8

*Donnell v. Kowell*,
533 F.3d 762 (9th Cir. 2008) ..............................................................................................6

*Guttmann v. Nissin Foods (U.S.A.) Co.*,
No. C 15-00567 WHA, 2015 U.S. Dist. LEXIS 92756 (N.D. Cal. July 15, 2015) ..................9

*Hammock v. Nutramarks, Inc.*,
No. 15CV2056 BTM (NLS), 2016 WL 4761784 (S.D. Cal. Sept. 12, 2016).........................10

*Hauk v. JP Morgan Chase Bank USA*,
552 F.3d 1114 (9th Cir. 2009) ..............................................................................................8

ii

*Hawkins v. Advancepierre Foods Inc.*,
733 F. App'x 906 (9th Cir. 2018) ...............................................................................................9

*Hawkins v. AdvancePierre Foods, Inc.*,
No. 15-cv-2309-JAH (BLM), 2016 U.S. Dist. LEXIS 155809
(S.D. Cal. Nov. 8, 2016) ........................................................................................................3, 4

*Hawkins v. Kellogg Co.*,
224 F. Supp. 3d 1002, 1015 (S.D. Cal. 2016)...........................................................................3

*Hawkins v. Kroger Co.*,
906 F.3d 763 (9th Cir. 2018) ...................................................................................................12

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
No. 13-11343-NMG, 2014 U.S. Dist. LEXIS 28108, 2014 WL 866571
(D. Mass. Mar. 5, 2014) ...........................................................................................................8

*In re Ford Tailgate Litig.*,
No. 11-CV-2953-RS, 2014 U.S. Dist. LEXIS 199411, 2014 WL 1007066
(N.D. Cal. Mar. 12, 2014).......................................................................................................11

*Int'l Paper Co. v. Ouellette*,
479 U.S. 481 (1987).................................................................................................................6

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ...........................................................................................................14

*Jordan v. Paul Fin., LLC*,
745 F. Supp. 2d 1084 (N.D. Cal. 2010) ...................................................................................8

*Kwikset Corp. v. Super. Court*, 51 Cal. 4th 310, 326 (2011).....................................................11, 12

*Madrigal v. Hint, Inc.*,
No. CV 17-02095-VAP, 2017 U.S. Dist. LEXIS 221801
(C.D. Cal. Dec. 14, 2017) ......................................................................................................10

*Martin v. Medtronic, Inc.*,
No. 1:15-cv-00994-DAD-MJS, 2017 U.S. Dist. LEXIS 26350
(E.D. Cal. Feb. 24, 2017) .........................................................................................................8

*Martinez v. Wells Fargo Home Mortg., Inc.*,
598 F.3d 549 (9th Cir. 2010) ....................................................................................................9

*McGee v. S-L Snacks National, LLC*,
No. 17-55577 (9th Cir.) ............................................................................................................2

*Metro. Water Dist. v. Superior Court*,
32 Cal. 4th 491 (2004).............................................................................................................11

*Nathan Kimmel, Inc. v. DowElanco*,
　　275 F.3d 1199 (9th Cir. 2002) ...................................................................................6

*Nowrouzi v. Maker's Mark Distillery, Inc.*,
　　No. 14-cv-2885 JAH (NHS), 2015 U.S. Dist. LEXIS 97752, 2015 WL 4512551
　　(S.D. Cal. July 27, 2015)............................................................................................8

*Red v. Gen. Mills, Inc.*,
　　No. 2:15-cv-02232-ODW(JPR), 2015 WL 9484398, 2015 U.S. Dist. LEXIS
　　172671 (C.D. Cal. Dec. 29, 2015) ...........................................................................10

*Saubers v. Kashi Co.*,
　　39 F. Supp. 3d 1108, 1111 (S.D. Cal. 2014).............................................................15

*Schroeder v. United States*,
　　569 F.3d 956 (9th Cir. 2009) ...................................................................................10

*Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*,
　　733 F.3d 1251 (9th Cir. 2013) .................................................................................13

*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,
　　No. 17-CV-03871-LHK, 2017 U.S. Dist. LEXIS 167462
　　(N.D. Cal. Oct. 10, 2017)..........................................................................................11

*Sw. Ctr. for Biological Diversity v. U.S. Dep't. of Agric.*,
　　314 F.3d 1060 (9th Cir. 2002) ...................................................................................5

*Ting v. AT&T*,
　　319 F.3d 1126 (9th Cir. 2003) ...............................................................................3, 6

*United States v. Kim*,
　　449 F.3d 933 (9th Cir. 2006) .....................................................................................8

*Walker v. B&G Foods, Inc.*,
　　No. 15-cv-03772-JST, 2016 U.S. Dist. LEXIS 15194 (N.D. Cal. Feb. 8, 2016).....................15

*Walker v. Conagra Foods, Inc.*,
　　No. 4:15-cv-02424-JSW (N.D. Cal. Mar. 31, 2017)....................................................4

*Winn v. Mondelez Int'l, Inc.*,
　　No. 4:17-cv-2524-HSG (N.D. Cal. July 13, 2018) ......................................................2

*Wyeth v. Levine*,
　　555 U.S. 555 (2009).....................................................................................................7

*Yastrab v. Apple Inc.*,
　　No. 5:14-cv-01974-EJD, 2015 U.S. Dist. LEXIS 37119 (N.D. Cal. Mar. 23, 2015) ..............12

*Yumul v. Smart Balance, Inc.*,
　　733 F. Supp. 2d 1117 (C.D. Cal. May 24, 2010) ......................................................14

REPLY IN SUPPORT OF MOTION TO STAY, OR ALT., DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:18-cv-06730-SI

**STATUTES**

Cal. Bus. & Prof. Code § 17204 ...............................................................................................11

Cal. Bus. & Prof. Code § 17205 ...............................................................................................11

Cal. Bus. & Prof. Code § 17535 ...............................................................................................11

Cal. Civ. Code § 1770(a) ...........................................................................................................12

Cal. Health & Safety Code § 110085.........................................................................................9

Consolidated Appropriations Act of 2018, Pub. L. 115-141, Section 738 ..............1, 3, 4, 5, 6, 8, 9

Federal Food, Drug, and Cosmetic Act,  21 U.S.C. Ch. 9....................................................3, 6, 7, 9

Lawful Commerce in Arms Act, 15 U.S.C. §§ 7901-7903..........................................................6

Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code, Part 5  .............................7

Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*  ..................................................................8

**OTHER AUTHORITIES**

12 C.F.R. Part 226.....................................................................................................................8

21 C.F.R. §§ 184.1555(c)(2), 184.1472(b) ................................................................................9

21 C.F.R. § 170.30(c)(1)...........................................................................................................4

Comment from Gregory Weston, The Weston Firm, RE: Agency/Docket No. FDA
     2013-N-1317 (received April 14, 2015), *available at*
     https://www.regulations.gov/document?D=FDA-2013-N-1317-0223 ...................................1

Tentative Determination Regarding Partially Hydrogenated Oils, 78 Fed. Reg. 67169,
     67171 (Nov. 8, 2013) ...........................................................................................................4, 5

Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. at 34650
     (June 17, 2015)..................................................................................1, 3, 4, 8, 9, 14, 15

Final Determination Regarding Partially Hydrogenated Oils, 83 Fed. Reg. 23358-59
     (May 21, 2018)....................................................................................................................15

FY 2016 Omnibus Summary — Agriculture Appropriations, House Appropriations
     Committee, *available at*
     https://web.archive.org/web/20180605221327/https://appropriations.house.gov/
     uploadedfiles/12.15.15_fy_2016_omnibus_-_agriculture_-_summary.pdf.............................1

Legislative Digest, Dec. 18, 2015, Republican Policy Committee, *available at*
     https://web.archive.org/web/20180923075049/https://policy.house.gov/legislative/
     legislative-digest/friday-december-18-2015 ...........................................................................1

v

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

In 2015, the FDA determined that food manufacturers must stop using PHOs by June 18, 2018.  Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650-01 (June 17, 2015) ("2015 Final Determination").  During the notice and comment period, Plaintiff's counsel requested that the FDA declare PHOs immediately unlawful.[1]  The FDA rejected his request.  It determined a three-year grace period was necessary to (1) give small businesses time to address "limited research and development resources and potential challenges to gain timely access to suitable alternatives," (2) "minimiz[e] market disruptions," and (3) "provide[] time for the growing, harvesting, and processing of new varieties of edible oilseeds."  80 Fed. Reg. 34668-69.  Congress then made the three-year grace period law in the Consolidated Appropriations Act of 2018 ("CAA"), Pub. L. 115-141, Section 738.  Congress did so to prevent "frivolous lawsuits."  FY 2016 Omnibus Summary — Agriculture Appropriations, House Appropriations Committee;[2] Legislative Digest, Dec. 18, 2015, Republican Policy Committee.[3]

Since then, Plaintiff's counsel has filed at least seven such "frivolous lawsuits" seeking to override the FDA and Congress's mandate by eliminating their grace period.  *Id.*  Courts have consistently rejected his claims.  *See, e.g.*, *infra* at 3-4 (discussing seven court cases rejecting Plaintiff's counsel's nearly identical claims).  This Court should reach the same conclusion.  Additionally, as discussed in Conagra's opening brief and herein, all of Plaintiff's claims are subject to dismissal for myriad pleading and standing deficiencies.

---

[1] *See* Comment from Gregory Weston, The Weston Firm, RE: Agency/Docket No. FDA 2013-N-1317 (received April 14, 2015), *available at* https://www.regulations.gov/document?D=FDA-2013-N-1317-0223, (**Ex. A** to Tumeh Decl.).

[2]https://web.archive.org/web/20180605221327/https://appropriations.house.gov/uploadedfiles/12.15.15_fy_2016_omnibus_-_agriculture_-_summary.pdf

[3]https://web.archive.org/web/20180923075049/https://policy.house.gov/legislative/legislative-digest/friday-december-18-2015

1

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    THE COURT SHOULD STAY THE CASE PENDING THE NINTH CIRCUIT'S DECISION IN *MCGEE V. S-L SNACKS NATIONAL, LLC.*

Judicial economy warrants staying this case pending the Ninth Circuit's decision in *McGee v. S-L Snacks National, LLC*, No. 17-55577 (9th Cir.).  Key to this case is whether Plaintiff's Use Claims are conflict preempted, a question squarely before the Ninth Circuit in *McGee*.  Staying this action and deciding it with the benefit of *McGee* therefore would not only save the litigants and Court significant resources, but also minimize the likelihood of relitigating issues after *McGee* is decided.

Plaintiff's Response erroneously suggests that *McGee* is inconsequential because Plaintiff's Labeling Claims and Use Claims seek the same relief.  First, Plaintiff voluntarily chose to assert his frivolous Use Claims, which assert different factual and legal bases for liability from the Labeling Claims, despite identical claims being repeatedly rejected by every California district court to consider them.  Given the clear precedent on its side, Conagra had little choice but to move to dismiss those claims, regardless of whether they seek relief similar to the Labeling Claims – and *McGee* is likely to aid in the resolution of that motion.  Second, Plaintiff's counsel now contradicts his request to the Ninth Circuit in *McGee*, in which he stated: "[T]here are other district courts that would use that guidance and find it helpful.  In fact, there are three district court cases that have been stayed pending a decision in this case, *and I believe a published decision would provide better guidance for them.*"  Case No. 17-55577, ECF No. 43 (emphasis added).  Plaintiff's counsel has agreed to similar stays in other cases,[4] and nothing in Plaintiff's Response suggests Plaintiff would suffer any prejudice from a stay.  The Court should accordingly enter a stay pending resolution of *McGee*.

### B.    CONFLICT PREEMPTION BARS THE USE CLAIMS.

The doctrine of conflict preemption bars the Use Claims alleged in the First and Second Causes of Action.  Under that doctrine, state law is preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Ting v. AT&T*, 319

---

[4] *See, e.g.*, Pls.' Resp. to Order to Show Cause re: Stay, *Winn v. Mondelez Int'l, Inc.*, No. 4:17-cv-2524-HSG (N.D. Cal. July 13, 2018), ECF No. 36, which remains stayed.

F.3d 1126, 1136 (9th Cir. 2003) (quotation marks and citations omitted).  Here, both the FDA and Congress have expressly authorized companies to manufacture, market, and sell products containing PHO and artificial trans fat during the relevant period.  Though the FDA found in the 2015 Final Determination that PHO is no longer "Generally Recognized as Safe," or GRAS, it purposefully delayed the compliance deadline and permitted PHO use in any food product until June 18, 2018 to: (1) give small businesses time to address "limited research and development resources and potential challenges to gain timely access to suitable alternatives," (2) "minimiz[e] market disruptions," and (3) "provide[] time for the growing, harvesting, and processing of new varieties of edible oilseeds." 80 Fed. Reg. 34668-69.

Congress made the three-year grace period law, stating no PHO "shall be deemed unsafe within the meaning of section 409(a) . . . [or] adulterated under sections 402(a)(1) or 402(a)(2)(C)(i) by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in" the FDA's 2015 Final Determination.  Pub. L. 115-141, Section 738.  Congress *expressly* precluded private actions challenging a company's PHO use before the FDA's June 2018 compliance deadline "to prevent frivolous lawsuits" precisely like this one.  *Hawkins v. Kellogg Co.*, 224 F. Supp. 3d 1002, 1015 (S.D. Cal. 2016); *Hawkins v. AdvancePierre Foods, Inc.*, No. 15-cv-2309-JAH (BLM), 2016 U.S. Dist. LEXIS 155809, at *11 (S.D. Cal. Nov. 8, 2016) (holding the CAA was "a clear step by Congress to preclude parties, like Plaintiff, from bringing suit against food manufacturers based on use of PHO before the compliance date"); FY 2016 Omnibus Summary — Agriculture Appropriations, House Appropriations Committee, *supra*, note 2; Legislative Digest, Dec. 18, 2015, REPUBLICAN POLICY COMMITTEE, *supra*, note 3.

Plaintiff's Use Claims directly conflict with the 2015 Final Determination and the CAA because they seek to hold Conagra liable for alleged PHO use before June 18, 2018.  Like in at least seven other actions brought by Plaintiff's counsel, conflict preemption bars Plaintiff's Use Claims. *See Backus v. Gen. Mills, Inc.*, No. 15-cv-01964-WHO, 2018 U.S. Dist. LEXIS 208198, *11 (N.D. Cal. Dec. 10, 2018) ("there is no plausible reading of Section 754, in which Congress set a compliance date for the legality of PHOs based on its best judgment for consumers and businesses, that allows

3

for imposing liability on the use of PHOs before the compliance date"); *Hawkins*, 2016 U.S. Dist. LEXIS 155809, at *18 ("Because Plaintiff's claims stand as a direct obstacle to the FDA's objective to minimize market disruptions by providing three years' notice of the compliance date on use of PHO in food and Congress's objective to bolster the FDA's Final Determination through the . . . CAA, Plaintiff's . . . state claims are barred by conflict preemption."); *Backus v. ConAgra Foods, Inc.*, No. C 16-00454 WHA, 2016 U.S. Dist. LEXIS 92355, at *10-11 (N.D. Cal. July 15, 2016) (similar); *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1074 (N.D. Cal. 2016) (similar); *Backus v. Biscomerica Corp.*, No. 16-cv-03916-HSG, 2017 U.S. Dist. LEXIS 44832, at *1 (N.D. Cal. Mar. 27, 2017) (similar); *Walker v. Conagra Foods, Inc.*, No. 4:15-cv-02424-JSW, (N.D. Cal. Mar. 31, 2017), ECF No. 55 at 5 (similar); *Hawkins*, 224 F. Supp. 3d at 1015.  All of Plaintiff's arguments to the contrary are meritless.

*First*, courts have rejected the argument that PHOs are unlawful because the FDA never expressly identified PHOs as GRAS.  *See* Resp. at 5; *see, e.g.*, *Backus v. Gen. Mills*, 122 F. Supp. 3d 909, 927 (N.D. Cal. 2015) (in an action brought by Plaintiff's counsel, finding preemption and holding PHOs were "widely treated as GRAS," and holding "[m]ultiple statements in the FDA's final order imply that PHOs were considered GRAS until the order revoked that status, including statements such as 'there is no longer a consensus,' and 'PHOs are no longer GRAS.'" (citing 2015 Final Determination)).  Indeed, the current regulatory scheme does not require formal GRAS designation for food additives in wide use before 1958, *see* 21 C.F.R. § 170.30(c)(1), and the FDA itself acknowledged, "PHOs … have been considered GRAS . . .  based on a history of use prior to 1958."  78 Fed. Reg. 67169, 67171 (Nov. 8, 2013).

*Second*, Plaintiff argues that the FDA's compliance period is not preemptive because it is a mere exercise of "prosecutorial discretion" and because "statements of enforcement policies merely set forth which instances of such illegal use the FDA is likely to view as requiring it to take enforcement action."  Resp. at 5.  But Plaintiff's argument ignores the CAA and its plain language. The CAA definitively provides "*[n]o* partially hydrogenated oils . . . *shall* be deemed unsafe . . . [or] adulterated" until June 18, 2018.  Pub. L. 115-141, Section 738.  The CAA's language, in short, is

REPLY IN SUPPORT OF MOTION TO STAY, OR ALT., DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:18-cv-06730-SI

clearly mandatory, not discretionary.

*Third*, Plaintiff argues that the CAA is not retroactive, *see* Resp. at 11-14, but the retroactivity doctrine does not apply here. As one court explained in rejecting the same argument made by Plaintiff's counsel, "Plaintiff filed [his] complaint *after* the 2016 CAA was signed into law." *Hawkins*, 224 F. Supp. 3d at 1015. The CAA is not even retroactive within the meaning of the doctrine. A "statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment . . . or upsets expectations based in prior law.'" *Backus*, 2018 U.S. Dist. LEXIS 208198, at *17; *see also Sw. Ctr. for Biological Diversity v. U.S. Dep't. of Agric.*, 314 F.3d 1060, 1061–62 (9th Cir. 2002) (holding intervening statute applicable despite Congress not specifying whether the statute applied because it had "no [] impermissible retroactive effect"). Rather, a law is retroactive if it attaches "'new legal consequences to events completed before its enactment.'" *Altmann v. Republic of Aus.*, 317 F.3d 954, 963 (9th Cir. 2002). Here, the CAA created no new legal consequences to PHO use before its enactment. As explained above, PHO use has been legal for decades. 78 Fed. Reg. 67169, 67171 ("PHOs … have been considered GRAS . . . based on a history of use prior to 1958."); *see also Backus*, 122 F. Supp. 3d at 927 (similar). PHO use remained legal following the CAA's passage through June 18, 2018. The CAA presents no retroactivity issues.

Even if the CAA were retroactive, it would be permissibly so. "Congress is empowered to enact statutes with retrospective effect" if there is a "clear indication from Congress that it intended such a result." *Altmann*, 317 F.3d at 963 (quotation marks and citation omitted). Here, Congress clearly intended for PHO use, which was legal before the act, to remain legal after the act until June 18, 2018. Plaintiff's retroactivity argument therefore fails. *See Backus*, 2018 U.S. Dist. LEXIS 208198, at *17 (rejecting the identical argument made by Plaintiff's counsel because if "Congress has expressly prescribed a statute's proper reach, there is no need to resort to judicial default rules," and in "enacting Section 754 [of the CAA], Congress has done precisely that.").

*Fourth*, Plaintiff argues that Conagra fails to rebut the "forceful" presumption against preemption because the CAA "says nothing about the states or state law." Resp. at 7; *see also id.* at

REPLY IN SUPPORT OF MOTION TO STAY, OR ALT., DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:18-cv-06730-SI

7-10. Just as seven other courts have done, this court should reject this argument. *See supra* at 3-4. It is axiomatic that "[p]reemption may be either express *or implied*, and is compelled whether Congress' command is explicitly stated in the statute's language *or implicitly contained in its structure and purpose.*"[5] *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1203 (9th Cir. 2002) (emphasis added); *see also Donnell v. Kowell*, 533 F.3d 762, 775 (9th Cir. 2008) (emphasis added). Here, the preemptive effect of the CAA is "'implicitly contained in its structure and purpose'" for the reasons explained above. *Nathan Kimmel, Inc.*, 275 F.3d at 1203. Plaintiff's state law actions would frustrate "the accomplishment and execution of the full purposes and objectives of Congress," *Ting*, 319 F.3d at 1136, outlined above, and "upset the balance of public and private interests so carefully addressed by" the FDA and Congress, *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987).

Plaintiff insists that, if there is a plausible alternative reading of a statute, the Court must accept the reading that disfavors preemption. *See* Resp. at 7. Another court rejected this same argument by Plaintiff's counsel: "Section 754 does not explicitly mention states or state law does not make it per se plausible that it does not preempt California law. In fact, there is *no plausible reading* of Section 754, in which Congress set a compliance date for the legality of PHOs based on its best judgment for consumers and businesses, that allows for imposing liability on the use of PHOs before the compliance date." *Backus*, 2018 U.S. Dist. LEXIS 208198, at *11 (emphasis added).

*Fifth*, Plaintiff emphasizes that the CAA prohibits only the FDA from deeming a PHO unsafe or unadulterated and does not expressly govern the states. Resp. at 8-10. But as one court has noted in addressing this exact argument by Plaintiff's counsel, this "reading of the statute is illogical, inconsistent with how he has brought his claims, and has been rejected by a number of courts." *Id.*, at *14-15. Section 738 of the CAA states in full:

> No partially hydrogenated oils as defined in the order published by the Food and Drug Administration in the Federal Register on June 17, 2015 (80 Fed. Reg. 34650 et seq.)

---

[5] Plaintiff's lengthy recitation regarding the Protection of Lawful Commerce in Arms Act ("PLCAA") is meritless for the same reason. *See* Resp. at 12-13. That Congress chose to expressly preempt state tort suits in the PLCAA in no way prevents Congress from impliedly preempting certain state tort suits in other contexts.

REPLY IN SUPPORT OF MOTION TO STAY, OR ALT., DISMISS FIRST AMENDED COMPLAINT
CASE NO. 3:18-cv-06730-SI

*shall be deemed unsafe within the meaning of section 409(a)* of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 348(a)) and no food that H. R. 1625—43 is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil *shall be deemed adulterated under sections 402(a)(1) or 402(a)(2)(C)(i) of this Act* by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

Pub. L. 115-141, Section 738 (emphasis added). This plain language is not limited to the FDA. Even more fundamentally, Plaintiff himself "tethers his [Use Claims] to [Conagra's] alleged violation of the FDCA and the California Sherman Food, Drug, and Cosmetic Law, which adopts all FDA regulations as state regulations. Even taking [Plaintiff's] reading as correct, the very fact that the California Sherman Food, Drug, and Cosmetic Law incorporates all FDA regulations would effectively preempt his claim." *Backus*, 2018 U.S. Dist. LEXIS 208198, at \*15.

*Finally*, Plaintiff's reliance on *Wyeth v. Levine*, 555 U.S. 555 (2009) is misplaced. *Wyeth* addressed whether "FDA[] drug labeling judgments" applicable to prescription drugs, which are not at issue here, "preempt[ed] state law product liability claims." *Id.* at 563. The Supreme Court held they did not because there was no evidence that Congress viewed "state tort litigation as an obstacle to achieving its purposes." *Id.* at 575. In contrast, seven courts have held that such evidence exists here. *See supra* at 3-4. It is clear why. Congress expressly passed Section 738 so that businesses "*are not subject to frivolous lawsuits*." FY 2016 Omnibus Summary — Agriculture Appropriations, House Appropriations Committee (emphasis added), *supra*, note 2; Legislative Digest, Dec. 18, 2015, REPUBLICAN POLICY COMMITTEE, *supra*, note 3; *Hawkins*, 224 F. Supp. 3d at 1015.[6] *Wyeth* is therefore inapposite. For these reasons, Plaintiff's Use Claims are preempted.

## C.    THE FIRST CAUSE OF ACTION IS SIMILARLY BARRED BY CALIFORNIA'S SAFE HARBOR DOCTRINE.

For the same reasons conflict preemption bars Plaintiff's Use Claims, California's safe harbor doctrine specifically bars the First Cause of Action, which alleges Conagra's use of PHO violated the

---

[6] *Wyeth* is also distinguishable because there Congress had enacted an "express pre-emption provision for medical devices" but not "prescription drugs." *Id.* at 574. Effectively applying the doctrine of expresio unius, the Supreme Court concluded that, had Congress wanted the prescription drug provisions to be preemptive, it would have said so, as it did in the context of parallel medical device provisions. Here, there are no parallel express preemption provisions at issue, and the doctrine of expresio unius does not apply.

7

UCL. *See* FAC ¶¶ 101-10. California law provides "'[w]hen specific legislation provides a safe harbor, plaintiffs may not use the general unfair competition law [UCL] to assault that harbor.'" *Davis v. HSBC Bank*, 691 F.3d 1152, 1164 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999)). Here, both the 2015 Final Determination and CAA have expressly authorized use of PHOs through June 18, 2018.

Plaintiff responds that "Con[a]gra has provided no citation to a federal enforcement policy for a federal statue somehow providing a safe harbor for the private enforcement of a state law." Resp. at 16. But Conagra's Motion cited two binding Ninth Circuit decisions holding that federal law created a safe harbor under California's safe harbor doctrine. *See* Mot. at 10, citing *Davis* 691 F.3d at 1167 ("TILA [the federal Truth in Lending Act] and Regulation Z [12 C.F.R. Part 226] expressly permit and require that online credit card applications disclose the annual fee in a prescribed manner…[Defendant's] conduct cannot give rise to UCL liability."); *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (same). Other cases have also held that the federal government may create a safe harbor. *See, e.g.*, *United States v. Kim*, 449 F.3d 933, 939 (9th Cir. 2006) (recognizing that either federal or state law may create a safe harbor precluding a UCL claim); *Martin v. Medtronic, Inc.*, No. 1:15-cv-00994-DAD-MJS, 2017 U.S. Dist. LEXIS 26350, at *49-50 (E.D. Cal. Feb. 24, 2017) (FDA approval brought the plaintiff's claims within the California safe harbor provision); *Nowrouzi v. Maker's Mark Distillery, Inc.*, No. 14-cv-2885 JAH (NHS), 2015 U.S. Dist. LEXIS 97752, 2015 WL 4512551, at *2-3 (S.D. Cal. July 27, 2015) (collecting cases outside of California that have applied the California safe harbor doctrine); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. 13-11343-NMG, 2014 WL 866571 *3 (D. Mass. Mar. 5, 2014).

Nor does Plaintiff's citation to *Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084 (N.D. Cal. 2010) help him. *Jordan* noted that a "safe harbor exists only where conduct is expressly permitted, and not merely because conduct is not expressly prohibited." *Id.* at 1099. Here, the CAA does expressly permit PHO use before June 18, 2018: it provides "[n]o partially hydrogenated oils . . . shall be deemed unsafe . . . [or] adulterated . . . until the compliance date as specified in such order (June

8

18, 2018)." Pub. L. 115-141, Section 738.[7] For these reasons, Plaintiff's First Cause of Action is barred under California's safe harbor doctrine.

### D. THE FIRST CAUSE OF ACTION ADDITIONALLY FAILS BECAUSE PHO USE CANNOT BE UNLAWFUL OR UNFAIR AS A MATTER OF LAW.

Similarly, the First Cause of Action fails because PHO use cannot, as a matter of law, be unlawful or unfair because the FDA and Congress have expressly authorized PHO use. A UCL claim premised on unlawful conduct must allege a predicate legal violation. *See Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 558 (9th Cir. 2010). Plaintiff fails to do so. Plaintiff erroneously alleges PHO use before June 18, 2018 violates the FDCA and the Sherman Law. However, as the Ninth Circuit found in *Hawkins v. AdvancePierre Foods, Inc.*, 733 F. App'x 906, 906-07 (9th Cir. 2018) the alleged conduct cannot be considered unlawful because both the FDA and Congress have *expressly authorized* PHO use before then. Seven California federal district courts have reached the same conclusion. *See supra* at 3-4. Plaintiff similarly fails to state a UCL claim premised on unfair conduct. The FDA and Congress created a safe harbor by expressly legalizing PHO use until June 18, 2018. California law expressly incorporates regulations promulgated under the FDCA, including regulations addressing additive food products not designated as GRAS. *See* Cal. Health & Safety Code § 110085. The First Cause of Action therefore fails.

### E. THE SECOND CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY CLAIM FAILS.

Plaintiff fails to state a claim for breach of the implied warranty under California law for two independent reasons. First, "the warranty of merchantability 'provides for a *minimum* level of

---

[7] Plaintiff repeats that the FDA's compliance deadline is a mere guideline addressing the exercise of prosecutorial discretion. *See* Resp. at 16. But, as explained above, nothing about the Congressional statute creates a mere guideline. *See supra* at 3-4. Moreover, Plaintiff's citation to *Guttmann v. Nissin Foods (U.S.A.) Co.*, No. C 15-00567 WHA, 2015 U.S. Dist. LEXIS 92756, at *11-12 (N.D. Cal. July 15, 2015) does not help him. *See* Resp. at 16. *Guttman* noted that the FDA affirmatively recognized "certain partially-hydrogenated oils, namely low euric acid grapeseed oil and menhaden oil," but not all PHOs, as GRAS. *Id.* at *11 (citing 21 C.F.R. §§ 184.1555(c)(2), 184.1472(b)). The Court held that the "FDA's prior declination to issue a regulation pertaining to *all* artificial trans-fats did not establish a safe harbor." *Id.* (emphasis added). The question here is different; it is whether the 2015 Final Determination, which applies to *all* PHOs, creates a safe harbor because it expressly authorizes PHO use until June 18, 2018. For the reasons discussed above, the answer is yes.

9

quality.'" *Red v. Gen. Mills, Inc.*, No. 2:15-cv-02232-ODW(JPR), 2015 WL 9484398, 2015 U.S. Dist. LEXIS 172671, at *17 (C.D. Cal. Dec. 29, 2015) (emphasis added).  Plaintiff's response that PHOs do not meet this minimum level of quality because the FDA has determined they are not GRAS, Resp. at 19, merely re-packages his Use Claim arguments—all of which fail for the reasons discussed above, *see supra* at 3-4.  Plaintiff cannot assert Crunch 'n Munch® provides less than the "*minimum level of quality*'" when both the FDA and Congress have expressly determined that PHO use is permissible before June 18, 2018.  Beyond that, the FDA and Congress both have made clear that determination has no effect until June 18, 2018.

Second, there is no vertical privity between Plaintiff and Conagra.  *Clemens v DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (explaining a consumer who buys from a retailer is not in privity with the defendant manufacturer).  Plaintiff does not and cannot allege he purchased directly from Conagra.  Further, the "foodstuffs" exception to the privity requirement is inapplicable because the Plaintiff does not allege personal injury or that the product was unfit for human consumption.  *Hammock v. Nutramarks, Inc.*, No. 15CV2056 BTM (NLS), 2016 WL 4761784, at *5 (S.D. Cal. Sept. 12, 2016).  Plaintiff cites articles for the abstract notion that PHO can harm health, but he fails to specify any injury he personally has suffered—much less link it to PHO. The Second Cause of Action therefore fails.

**F.      THE UCL AND FAL CLAIMS IN THE FIRST, THIRD, AND FOURTH CAUSES OF ACTION SHOULD BE DISMISSED BECAUSE THEY DUPLICATE LEGAL CLAIMS ASSERTING AN ADEQUATE REMEDY.**

Plaintiff's equitable UCL and FAL claims (the First, Third and Fourth Causes of Action) fail because they duplicate legal claims asserting an adequate remedy at law.  "[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009).  Here, Plaintiff's UCL and FAL claims, which are equitable, duplicate his implied warranty and express warranty claims, which are legal.  "Plaintiffs are, of course, entitled to plead alternative claims under Federal Rule of Civil Procedure 8(a)." *Madrigal v. Hint, Inc.*, No. CV 17-02095-VAP (JCx), 2017 U.S. Dist. LEXIS 221801, at *12 (C.D. Cal. Dec. 14, 2017). But where, as here, "'[an equitable claim] relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of

10

action.'"  *Id.* (quoting *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 U.S. Dist. LEXIS 199411, 2014 WL 1007066, at *5 (N.D. Cal. Mar. 12, 2014)).  Each equitable claim is predicated on the same facts as a corresponding legal claim—and Plaintiff's Response does not assert otherwise. Plaintiff's equitable claims therefore must be dismissed.[8] *See, e.g.*, *id.* at *13-14 (dismissing equitable claims that factually duplicated legal claims); *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, No. 17-CV-03871-LHK, 2017 U.S. Dist. LEXIS 167462, at *36 (N.D. Cal. Oct. 10, 2017) (similar).

Of the four cases Plaintiff cites in his Response, not one even addresses this argument.  *See* Resp. at 17.   Plaintiff incorrectly relies on the UCL for the proposition that its remedies are "cumulative to each other and to the remedies or penalties available under all other laws of this state." *Id.* (citing Cal. Bus. & Prof. Code § 17205).  But "[s]tatutes will not be interpreted to alter common law rules absent a clear statement to that effect. A statute will be construed in light of common law decisions, unless its language clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter[.]"  *Metro. Water Dist. v. Superior Court*, 32 Cal. 4th 491, 511-12 (2004).  Nothing in the UCL comes close to addressing— much less overriding—the common law principle that "'where [an equitable claim] relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action.'"  *Madrigal*, 2017 U.S. Dist. LEXIS 221801, at *12.  The First, Third and Fourth Causes of Action therefore fail.

### G. PLAINTIFF LACKS STATUTORY STANDING TO BRING HIS THIRD, FOURTH, AND SIXTH CAUSES OF ACTION—THE UCL, FAL, AND CLRA LABELING CLAIMS.

Plaintiff additionally fails to plead statutory standing to sustain his UCL and FAL claims or reliance to sustain his CLRA claim.  To have statutory standing under the UCL or FAL, Plaintiff must have lost money or property "as a result of" Conagra's alleged mislabeling of Crunch 'n Munch®. Cal. Bus. & Prof. Code §§ 17204 & 17535; *see also Kwikset Corp. v. Super. Court*, 51 Cal. 4th 310, 326 (2011) (defining the phrase "as a result of"). Similarly, Plaintiff must allege reliance to assert a

---

[8] Although Plaintiff does not specify what kind of relief he seeks for his Sixth Cause of Action, he bases his CLRA claim on the same facts as his Fifth Cause of Action for breach of express warranty. Thus, to the extent Plaintiff seeks equitable relief, the Court should also dismiss this claim.

11

claim under the CLRA.  Cal. Civ. Code § 1770(a); *see Yastrab v. Apple Inc.,* No. 5:14-cv-01974-EJD, 2015 U.S. Dist. LEXIS 37119, at *13 (N.D. Cal. Mar. 23, 2015).  Plaintiff's own factual allegations and judicial admissions preclude him from satisfying these requirements.

In his initial Complaint and in other complaints he filed in separate actions, Plaintiff alleged that he "did not discover" that "trans fat is harmful to human health" until October 2018 (*see* Compl., ECF. 1, at ¶ 93) or even earlier in January 2017 (*see, e.g.*, *Beasley v. Lucky Stores, Inc*., No. 4:18-cv-07144 (N.D. Cal. Nov. 26, 2018), ECF No. 1-3, ¶ 71), and that "[u]ntil this time, he lacked the knowledge regarding the facts of his claims against Defendants" (Compl. ¶ 93; *Lucky Stores, Inc.*, ECF No. 1-3, ¶ 144).  If Plaintiff did not know about the purported potential dangers of trans fat when he purchased the products, as he alleges, then the amount of trans fat in Crunch 'n Munch® or the "0g Trans Fat" statement could *not* have been material to his purchasing decision.  Any purchases Plaintiff made following the date he allegedly discovered trans fats were harmful are irrelevant— Plaintiff does not dispute both dates significantly post-date when Crunch 'n Munch® became PHO free.  Plaintiff's UCL, FAL, and CLRA labeling claims thus fail.  *Kwikset Corp.*, 51 Cal. 4th at 326-27; *Yastrab*, 2015 U.S. Dist. LEXIS 37119, at *13.

Plaintiff asserts that the Ninth Circuit rejected Conagra's argument in *Hawkins v. Kroger Co.*, 906 F.3d 763, 769 (9th Cir. 2018).  Resp. at 15.  But *Hawkins* did not address Conagra's argument here—much less reject it.  *Hawkins* noted only that the district court misread the complaint, confusing when the Plaintiff alleged she read the label with when she alleged she discovered the label was misleading.  The point here is different: by alleging he learned that PHOs were dangerous *after* his purchases—in multiple pleadings in multiple cases—Plaintiff concedes that, even assuming he had read the label before his purchases, his interpretation of the labels would not have led him to refrain from purchasing the product.  The UCL, FAL, and CLRA labeling claims therefore fail.[9]

---

[9] Plaintiff's Sixth Cause of Action alleging a violation of the CLRA is deficient because Plaintiff failed to file the requisite declaration of venue and provide sufficient statutory notice before filing his original complaint.  Plaintiff responds only by citing out-of-circuit cases, none of which are binding here. Resp. at 24.  Finally, it remains unclear what corrective actions Plaintiff demands, and his allegation that he complied with the CLRA's notice provisions is implausible.  Conagra reserves all rights.

12

### H. PLAINTIFF FAILS TO PLEAD TIMELY CLAIMS UNDER RULES 12(B)(6) AND 9(B).

The FAC should also be dismissed in its entirety because Plaintiff failed to plead timely claims. To plausibly state a timely claim under Rule 12(b)(6), Plaintiff must allege he purchased Crunch 'n Munch® (1) after the statutory time-bar (three or four years, depending on the claim) and (2) before the product's non-PHO reformulation. Plaintiff fails to do either.

*First*, Plaintiff asserts claims dating back to 2010—nearly *__eight years__* before the initial Complaint was filed, well before the applicable statutes of limitation. In doing so, Plaintiff affirmatively pleads untimely claims. Plaintiff's argument that he need not plead around a statute of limitations because it is an affirmative defense misses the mark. *See* Resp. at 18. Plaintiff affirmatively plead facts that render his claims time-barred. Courts routinely dismiss cases in such circumstances. *See Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) ("A statute-of-limitations defense, *if apparent from the face of the complaint*, may properly be raised in a motion to dismiss." (emphasis added)); *see also* Mot. at 19-20.

Plaintiff's attempt to toll the statutes of limitation through the discovery rule also fails. To invoke the discovery rule, Plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Herremans*, 2014 U.S. Dist. LEXIS 145957, at *11-12. Plaintiff fails to properly allege either. As to the first requirement, Plaintiff's pleadings in other cases belie his allegation that he "did not discover that Defendant's behavior was unfair and unlawful and ConAgra's labeling was false, deceptive or misleading until October 2018…." FAC ¶ 91. Plaintiff does not—and cannot—rebut that he affirmatively alleged that he learned PHOs were harmful one year earlier in 2017. *See* Mot. at 21-22. Nor does the Response address that Plaintiff also fails to allege the manner of discovery. As to the second requirement, Plaintiff fails to plead the "inability to have made earlier discovery despite reasonable diligence." *Herremans*, 2014 U.S. Dist. LEXIS 145957, at *12. A plaintiff is "charged with presumptive knowledge of an injury if they have information of circumstances to put [them] on *inquiry* or if they have *the opportunity to obtain knowledge* from sources open to [their] supervision." *Plumlee*, 2014 U.S. Dist. LEXIS 121634, at *21-22. The "plaintiff must go find the

13

facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1988). Here, the FDA's 2015 Final Determination put Plaintiff on inquiry notice that PHOs are not GRAS—another critical point Plaintiff's Response fails to address, much less dispute.

***Second***, and fundamentally, Plaintiff fails to plausibly allege that he purchased Crunch 'n Munch® while the product contained PHO. Plaintiff fails to identify when—or even as a rough proxy, how often—during the eight-year period he purchased Crunch 'n Munch®—information uniquely within his possession and necessary to sustain his claims. Plaintiff's failure to offer any specifics is critical because, as he concedes, Crunch 'n Munch® stopped containing PHO during this eight-year period. *See* FAC ¶ 69. Thus, if Plaintiff purchased Crunch 'n Munch® after it stopped containing PHO, his claims would be factually impossible by his own admission.

For the same reason, Plaintiff's allegations fall far short of satisfying Rule 9(b). Because Plaintiff's claims sound in fraud, Plaintiff must allege with particularity the "who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124. Critically, Plaintiff fails to allege the "when." *Id.* Without any factual basis, the Court should reject the Plaintiff's conclusory assertion he purchased Crunch 'n Munch® while it contained PHO. *See Kearns*, 567 F.3d at 1126; *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 (C.D. Cal. May 24, 2010) (concluding the plaintiff failed to allege with particularity *when* she saw the alleged misrepresentations or purchased the product in question during the decade-long class period).

Plaintiff argues that he need not plausibly allege he purchased Crunch 'n Munch® when it contained PHO because the FAC defines "Crunch 'n Munch" as "Crunch 'n Munch during the period it contained PHO." Resp. at 18 (citing FAC ¶ 4). Plaintiff, however, cannot circumvent Rule 12(b)(6) or Rule 9(b) by artfully defining terms. He must allege *facts*—specifically, (1) when he purchased Crunch 'n Munch® and (2) that Crunch 'n Munch® contained PHO at that time. Plaintiff does neither. Rather than alleging dates or even rough time periods of his purchases—facts uniquely in his possession—he identifies a period of alleged liability, defines Crunch 'n Munch® accordingly, and then asks the Court to conclude—based on nothing—that Plaintiff must have made his purchases during that period. Thus, Plaintiff fails not only to plead his claims with particularity under Rule

14

9(b), but also to even plead plausible claims for relief.

## I.   THE ENTIRE FAC SHOULD BE DISMISSED OR STAYED UNDER THE DOCTRINE OF PRIMARY JURISDICTION.

The Court should alternatively dismiss or stay any surviving claims under the doctrine of primary jurisdiction—as two other courts have already done in cases brought by Plaintiff's counsel. *See Walker v. B&G Foods, Inc.*, No. 15-cv-03772-JST, 2016 U.S. Dist. LEXIS 15194, at \*14-20 (N.D. Cal. Feb. 8, 2016); *Backus* 122 F. Supp. 3d at 933-35.  Here, as detailed in Conagra's Motion all four factors in favor of primary jurisdiction are met, and the FDA continues to review and evaluate food additive petitions related to PHO.

Plaintiff argues otherwise based on his personal assessment that "the odds of success of such petition is approximately zero."  Resp. at 22.  Plaintiff's naked speculation regarding the likelihood the regulatory landscape will change in response to a stakeholder petition is not only irrelevant, but also wrong.  As noted in Conagra's motion (and ignored by Plaintiff), the FDA recently extended various deadlines in its 2018 Final Determination in response to a food additive petition submitted by the Grocery Manufacturer Association.[10]  In any event, the regulation of PHOs is an ongoing effort within the FDA's "special competence," one that weighs in favor of a stay or dismissal.  *Saubers v. Kashi Co.*, 39 F. Supp. 3d 1108, 1111 (S.D. Cal. 2014).  The Court should accordingly dismiss or stay the action under the doctrine of primary jurisdiction.[11]

## III.   CONCLUSION

Defendant respectfully requests the Court dismiss the FAC in its entirety with prejudice.

DATED:  March 1, 2019          RACHEL E. K. LOWE
                               **ALSTON & BIRD LLP**

                               */s/ Rachel E. K. Lowe*
                               **CONAGRA BRANDS, INC.**

---

[10] *See* 83 Fed. Reg. 23358-59 (extending deadlines for certain uses of PHOs to 2019, 2020, and 2021).

[11] Plaintiff's citation to *Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008) is meritless. Nothing in *Clark* suggests that a Court may not stay or dismiss a case here based on the FDA's primary jurisdiction to address petitions filed by parties other than the plaintiff.  In addition, Plaintiff's argument that dismissal would allow the statute of limitations to run ignores that primary jurisdiction doctrine addresses the institutional roles of courts versus agencies.  Nothing about the timing of Plaintiff's claims changes the difference in institutional roles that drives the doctrine.