UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK BEASLEY,<br><br>    Plaintiff,<br><br>    v.<br><br>CONAGRA BRANDS, INC.,<br><br>    Defendant. | Case No. 18-cv-06730-SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 30 |

Now before the Court is a motion by defendant Conagra Brands, Inc. ("Conagra") to dismiss plaintiff Mark Beasley's first amended class action complaint. Docket No. 30 ("Mot."). The motion is scheduled for hearing on March 22, 2019. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and hereby VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant's motion to dismiss, with and without prejudice, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

**BACKGROUND**

This is a proposed class action regarding the use and labeling of partially hydrogenated oils ("PHOs") in Conagra's popcorn snack, Crunch 'n Munch. According to the first amended complaint, "PHO was and is an unlawful and dangerous food additive due to its artificial trans fat content. Artificial trans fat is a toxic substance whose unlawful use contributed to hundreds of thousands of untimely deaths in the United States, primarily from heart disease, cancer, and diabetes." Docket No. 22 ("FAC") ¶ 5.

Plaintiff alleges that "[d]uring much of the Class Period," which runs from January 1, 2010, through May 31, 2018, "Crunch 'n Munch was made with PHO yet contained the deceptive and

unlawful nutrient content claim '0g Trans Fat Per Serving' prominently displayed on the front of the box. This language was part of an intentional, long-term campaign to deceptively market Crunch 'n Munch as healthful and free of trans fat." *Id.* ¶¶ 65-66, 94.

Plaintiff "regularly purchased Crunch 'n Munch during the Class Period." *Id.* ¶ 60. He "first discovered ConAgra's unlawful acts around October 2018, when he learned that Crunch 'n Munch contained an unsafe food additive for years and was fraudulently marketed." *Id.* ¶ 62. He states that he "relied on ConAgra's '0g Trans Fat' claim as a substantial factor in some of his purchases of Crunch 'n Munch" and that he "lost money when he purchased products that hurt his health and were unfairly sold [in] violation of federal and California law." *Id.* ¶¶ 64, 85. Plaintiff alleges that he "suffered physical injury when he repeatedly consumed" the trans fat-containing Crunch 'n Munch and also that "on at least one occasion, [he] would not have purchased Crunch 'n Munch absent Defendant's 0g Trans Fat misrepresentation, and never would have purchased it had he known it was unlawful and dangerous." *Id.* ¶¶ 86, 89. He states that "[d]uring the class period, Crunch 'n Munch was not fit for human consumption and had a value of $0." *Id.* ¶ 88.

Based upon these allegations, on November 6, 2018, plaintiff filed a class action complaint against defendant. Docket No. 1. On January 11, 2019, plaintiff filed the first amended complaint. Docket No. 22. Plaintiff seeks to represent a class defined as "All citizens of California who purchased in California, between January 1, 2010 and May 31, 2018, Crunch 'n Munch products containing partially hydrogenated oil." *Id.* ¶ 94. Plaintiff also seeks to represent a "0g Trans Fat Claim Subclass" defined as "All citizens of California who purchased in California, between January 1, 2010 and May 31, 2018, Crunch 'n Munch containing the nutrient content claim '0g Trans Fat' that contained added trans fat." *Id.*

The first amended complaint states the following claims for relief under California law: (1) violation of the "unfair" and "unlawful" prongs of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) breach of the implied warranty of merchantability; (3) violation of the "unlawful" and "fraudulent" prongs of the UCL, Cal. Bus. & Prof. Code §§ 17200 et seq.; (4) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; (5) breach of express warranty; and (6) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ.

Code §§ 1750 et seq. The third through sixth causes of action are limited to the "0g Trans Fat" subclass. Plaintiff seeks an order for disgorgement and restitution, as well as actual and punitive damages.

Defendant now moves to stay the case or alternatively to dismiss the first amended complaint. Docket No. 30.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. While a court deciding a motion to dismiss must take a complaint's well-pleaded factual allegations as true, it also must determine, relying on its "judicial experience and common sense," whether those allegations amount to a "plausible" claim. *Iqbal*, 556 U.S. at 664.

Additionally, fraud claims are subject to a higher standard and must be pleaded with particularity. Fed. R. Civ. P. 9(b). This is true of state law claims, such as those under the UCL, CLRA, and FAL, that are grounded in fraud, and which must "be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted). Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted). A plaintiff claiming fraud must also plead reliance. *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51 Cal. 4th 310, 326-27 (2011) (UCL); *Princess Cruise Lines, Ltd. v. Super. Ct. of Los Angeles Cnty.*, 179 Cal. App. 4th

3

46 (2009) (CLRA). The challenged statements must be judged against the "reasonable consumer" standard under the UCL, CLRA, and FAL. *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I. Conflict Preemption Bars the "Use" Claims (Claims One and Two).**

Defendant first argues that federal law conflict preempts plaintiff's "Use Claims" (Claims One and Two), which allege violations for the use of PHOs in Crunch 'n Munch. Conflict preemption exists "where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000) (citations omitted). State laws that conflict with or are inconsistent with federal law are nullified under the Supremacy Clause. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873-74 (2000); *see also Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984) (discussing field preemption versus conflict preemption, and stating that "If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law . . . .") (internal citations omitted). "Parties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law.'" *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227-28 (9th Cir. 2013) (citations omitted).

Of relevance here, on June 17, 2015, the Food and Drug Administration ("FDA") issued a notice and declaratory order entitled, "Final Determination Regarding Partially Hydrogenated Oils," finding that "there is no longer a consensus among qualified experts that partially hydrogenated oils

4

(PHOs) . . . are generally recognized as safe (GRAS) for any use in human food." 80 Fed. Reg. 34650, 34650 (June 17, 2015) (hereinafter, "Final Determination"). As such, the FDA "require[d] discontinuation of the use of these food additives" and set a compliance date of June 18, 2018. *Id.* at 34656, 34668. The FDA explained that it "believe[d] that 3 years is sufficient time for submission and review and, if applicable requirements are met, approval of food additive petitions for use of PHOs for which industry or other interested individuals believe that safe conditions of use may be prescribed." *Id.* at 34668. The FDA also found that a three-year period before compliance "will have the additional benefit of allowing small businesses time to address these challenges[,] . . . minimizing market disruptions[,] . . . [and] provid[ing] time for the growing, harvesting, and processing of new varieties of edible oilseeds . . . ." *Id.* at 34668-69.

In December 2015, Congress enacted the Consolidated Appropriations Act, 2016. Pub. L. No. 114-113, 129 Stat. 2242. Section 754 of the Act states:

> No partially hydrogenated oils as defined in the order published by the Food and Drug Administration in the Federal Register on June 17, 2015 (80 Fed. Reg. 34650 et seq.) shall be deemed unsafe within the meaning of section 409(a) and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under sections 402(a)(1) or 402(a)(2)(C)(i) by virtue of bearing or containing a partially hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

*Id.* at 2284 (hereinafter, "§ 754").

The Ninth Circuit has not spoken directly on whether federal law now preempts claims over the use of PHOs.[1] However, numerous judges in this district have examined the issue and have found claims based on the use of PHOs in food prior to June 18, 2018, are conflict preempted by the FDA's Final Determination and resulting legislation. For instance, in *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068 (N.D. Cal. 2016), Judge Chesney found that the plaintiff's "use claims,

---

[1] In a recent unpublished decision regarding similar allegations of the use of PHOs, the appeals court "assumed without deciding that [the plaintiff's] claims are not preempted by federal law" but went on to affirm the dismissal of her claims because she "failed to state a claim for a violation of California's Unfair Competition Law (UCL) or for the breach of the implied warranty of merchantability." *Hawkins v. AdvancePierre Foods, Inc.*, 733 Fed. App'x 906 (9th Cir. 2018). In another case brought by the same plaintiff, the Ninth Circuit did not reach the question of conflict preemption regarding the use of PHOs because the issue was not fully briefed on appeal. Instead, the appeals court remanded the issue to the district court to decide in the first instance. *Hawkins v. Kroger Co.*, 906 F.3d 763, 772-73 (9th Cir. 2018).

5

1  which challenge, as a violation of California statutory and common law, Nestlé's past and current

2  inclusion of PHOs in Coffee-mate, would effectively negate the FDA's order setting a compliance

3  date in 2018 and 'stand[] as an obstacle to the accomplishment and execution of the full purposes

4  and objectives' of the FDA in adopting that order." *Nestlé*, 167 F. Supp. 3d at 1072 (quoting *Ting*

5  *v. AT&T*, 319 F.3d 1126, 1136 (9th Cir. 2003)). More recently, Judge Orrick found likewise:

6  "Congress has been clear that no liability can arise for use of PHOs before the June 18, 2018

7  compliance date." *Backus v. General Mills, Inc.*, No. 15-cv-01964-WHO, 2018 WL 6460441, at *4

8  (N.D. Cal. Dec. 10, 2018). The Court agrees with the reasoning in these two *Backus* cases and thus

9  rules in line with the numerous other judges in this district who have found plaintiffs' California

10  state law claims regarding the use of PHOs in food prior to June 18, 2018, are conflict preempted

11  by federal law. *See Nestlé*, 167 F. Supp. 3d at 1072; *General Mills*, 2018 WL 6460441 at *4; *Walker*

12  *v. Conagra Foods, Inc.*, No. 15-cv-02424-JSW, 2017 U.S. Dist. LEXIS 222321, at *4-8 (N.D. Cal.

13  Mar. 31, 2017); *Backus v. Biscomerica Corp.*, No. 16-cv-03916-HSG, 2017 WL 1133406, at *2-4

14  (N.D. Cal. Mar. 27, 2017); *Backus v. Conagra Foods, Inc.*, No. 16-cv-00454-WHA, 2016 WL

15  3844331, at *3-4 (N.D. Cal. July 15, 2016).

16      The Court is not persuaded otherwise by plaintiff's arguments, many of which plaintiff's

17  same counsel has raised unsuccessfully in other cases in this district. Plaintiff first argues that as of

18  the issuance of the Final Determination, "it was unlawful for any manufacturer to introduce any

19  food containing PHO into interstate commerce" and that the three-year compliance period reflected

20  "an announced exercise of prosecutorial discretion" for which there is no precedent of "preemptive

21  effect over state laws." Docket No. 37 ("Opp'n") at 5. Plaintiff relies heavily on two cases: *Takhar*

22  *v. Kessler*, 76 F.3d 995 (9th Cir. 1996), and *Greene v. Five Pawns, Inc.*, No. 15-cv-1859 (DFMx),

23  2016 U.S. Dist. LEXIS 187866, at *31-33 (C.D. Cal. Aug. 30, 2016). Neither case applies here. In

24  *Takhar*, the Ninth Circuit found that the veterinarian plaintiff lacked standing to challenge the

25  FDA's issuance of a Compliance Policy Guide that specified the circumstances under which it

26  would consider regulatory action for extra-label drug use in animals. *Takhar*, 76 F.3d at 1001-02.

27  The court explained that the FDA was not required to provide notice and comment in issuing the

28  Compliance Policy Guide, because it was the Food, Drug, and Cosmetic Act that made extra-label

6

veterinary drug use illegal, and the guides "merely set forth which instances of such illegal use the FDA is likely to view as requiring it to take enforcement action . . . ." *Id.* at 1002. *Five Pawns* involved a question of disclosing the presence of certain chemicals on the packaging of defendant's nicotine e-liquid products, and the court explained that the FDA compliance policy in question "does not have the force of law because it is an interpretive rule" that was not subject to notice and comment and "the compliance policy is nowhere in the final rule." *Five Pawns*, 2016 U.S. Dist. LEXIS 187866 at *31.

Unlike in *Takhar* and *Five Pawns*, here the FDA issued its Final Determination after notice and comment, which specifically included comments that "recommended compliance dates ranging from immediate to over 10 years." *See* Final Determination at 34668. The subsequent legislation also incorporated specific reference to the June 18, 2018 compliance date. *See* § 754. The agency and subsequent congressional actions here thus differ significantly from the FDA actions at issue in *Takhar* and *Five Pawns*. These cases do not show, as plaintiff argues, that by enacting § 754, "Congress had no intent to preempt state law . . . but rather were [sic] only seeking [to] delay federal enforcement actions." *See* Opp'n at 6-7.

In arguing that defendant has not overcome the strong presumption against preemption, plaintiff cites to cases in which courts found no preemption where federal law made some foods legal but state law made them illegal. *See id.* at 7-8. For instance, the Ninth Circuit has found that the federal Poultry Products Inspection Act does not expressly preempt California state law that bans the sale of foie gras made by force-feeding birds, nor is the state statute preempted under field preemption or obstacle preemption. *See Ass'n des Éleveurs de Canards et d'Oies du Québec v. Becerra*, 870 F.3d 1140 (9th Cir. 2017). The facts and analysis of those cases differ significantly from the facts presented here—where a plaintiff is suing under state law for acts he contends were made immediately illegal by the Final Determination but where the Final Determination gives food manufacturers until June 18, 2018, to come into compliance.

Plaintiff next argues that § 754 regulates only the FDA, not the states, and that if Congress had intended to preempt state and local "food safety regulations, surely it would have been clearer." Opp'n at 8-10. As support, plaintiff selectively quotes from the Final Determination's response to

7

United States District Court
Northern District of California

1  comments requesting the FDA take a position regarding the effect of its order on state and local
2  laws, but plaintiff omits key language. *See id.* at 10. The relevant response reads, in full (with
3  omitted language in bold):

> There is no statutory provision in the FD&C Act providing for express preemption of any state or local law prohibiting or limiting use of PHOs in food, including state or local legislative requirements or common law duties. **As with any Federal requirement, if a State or local law requirement makes compliance with both Federal law and State or local law impossible, or would frustrate Federal objectives, the State or local requirement would be preempted. See *Wyeth* v. *Levine*, 555 U.S. 555 (2009); *Geier* v. *American Honda Co.*, 529 U.S. 861 (2000); *English* v. *General Electric Co.*, 496 U.S. 72, 79 (1990), *Florida Lime & Avocado Growers, Inc.*, 373 U.S. 132, 142-143 (1963); *Hines* v. *Davidowitz*, 312 U.S. 52, 67 (1941). We decline to take a position regarding the potential for implied preemptive effect of this order on any specific state or local law; as such matters must be analyzed with respect to the specific relationship between the state or local law and the federal law.** FDA believes, however, that state or local laws that prohibit or limit use of PHOs in food are not likely to be in conflict with federal law, or to frustrate federal objectives.

Final Determination at 34655 (emphasis added). The Court agrees with the other judges of this district who have rejected plaintiff's argument that § 754 does not apply to the states. *See, e.g., Nestlé*, 167 F. Supp. 3d at 1073 (finding that "nothing in the order suggests the FDA meant to reference general, broadly applicable state laws, such as those on which Backus's use claims are predicated, as opposed to statutory provisions specifically applicable to PHOs"); *General Mills*, 2018 WL 6460441, at *5 ("Even taking Backus's reading as correct, the very fact that the California Sherman Food, Drug, and Cosmetic Law incorporates all FDA regulations would effectively preempt his claim."); *Walker*, 2017 U.S. Dist. LEXIS 222321, at *7-8.

The Court likewise rejects plaintiff's argument that § 754 was not intended to be given "retroactive" effect. *See* Opp'n at 11-14. As Judge Orrick recently articulated, "If Congress has expressly prescribed a statute's proper reach, there is no need to resort to judicial default rules" such as the presumption against retroactive legislation. *See General Mills*, 2018 WL 6460441, at *6 (citing *Landgraf v. USA Film Prods.*, 511 U.S. 244, 280 (1994)). "In enacting Section 754" and setting the June 2018 compliance date, "Congress has done precisely that." *Id.*

Finally, plaintiff relies heavily on the Ninth Circuit's decision in *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015). There, the appellate court found that a plaintiff's California state law claims regarding the labeling of a product as containing "No Trans Fat" were not preempted by

8

federal law. *Reid*, 780 F.3d at 962-63. Here, defendant does not argue that plaintiff's claims regarding the "0g Trans Fat" label are preempted. Rather, defendant seeks preemption only of plaintiff's claims regarding the allegedly unlawful *use* of PHOs prior to June 2018. The Ninth Circuit to date has declined to address this issue. *See supra*, n.1.

In sum, the Court finds that federal law preempts plaintiff's "Use Claims," and accordingly DISMISSES Claims One and Two with prejudice. The Court therefore need not reach defendant's alternative arguments as to these claims, such as whether California's safe harbor doctrine bars plaintiff's claims. The Court further DENIES AS MOOT defendant's request to stay this action pending the Ninth Circuit's decision in *McGee v. S-L Snacks National, LLC*, No. 17-55577 (9th Cir.); defendant states that it seeks a stay only "[i]f the Court is not willing to grant Conagra's motion to dismiss the Use claims based on conflict preemption now . . . ." Mot. at 2.

## II. The "Mislabeling Claims" (Claims Three through Six) Are Dismissed with Leave to Amend.

Defendant moves to dismiss plaintiff's Claims Three through Six, which are brought on behalf of the "0g Trans Fat Subclass," arguing the following: that the UCL and FAL claims in Claims Three and Four duplicate legal remedies; that plaintiff lacks statutory standing to bring Claims Three, Four, and Six; that plaintiff fails to allege the circumstances surrounding his purchase with specificity, as required by Rule 9(b); that plaintiff has failed to plausibly plead timely claims; and that the case should be dismissed or stayed under the doctrine of primary jurisdiction.

As a threshold matter, the Court declines to dismiss or stay this case under the doctrine of primary jurisdiction. "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable,* 523 F.3d 1110, 1114 (9th Cir. 2008). "The 'deciding factor' in determining whether the primary jurisdiction doctrine should apply is 'efficiency.'" *Reid*, 780 F.3d at 967 (citing *Rhoades v. Avon Prods., Inc.,* 504 F.3d 1151, 1165 (9th Cir. 2007)). "Whether to stay or dismiss without prejudice a case within an administrative agency's primary jurisdiction is a decision within the discretion of the district court." *Davel*

9

*Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1091 (9th Cir. 2006). Here, the FDA has issued its Final Determination regarding PHOs. Defendant points to no pending resolution of a particular issue by the FDA that might further guide the Court's actions; rather, they point generally to the fact that the Final Determination allows for parties to submit individual petitions for review of PHOs as a food additive. *See Clark*, 532 at 1114; Mot. at 25. It does not appear that the defendant here has submitted such a petition. Accordingly, at this stage of the proceedings, and with the FDA having already made its position on PHOs known through a declaratory order, a stay or dismissal of the case weighs against the interests of efficiency. *See Reid*, 780 F.3d at 966-67 (finding the district court properly declined to dismiss or stay PHO mislabeling case under the primary jurisdiction doctrine). The Court therefore proceeds to analyze the remainder of defendant's grounds in support of dismissal.[2]

### A. Statutory Standing

Defendant argues that plaintiff lacks statutory standing to bring Claims Three, Four, and Six, as the UCL, FAL, and CLRA require that plaintiff plead and prove reliance. Mot. at 15-17.

The UCL, FAL, and CLRA all require a plaintiff to demonstrate standing. *See generally Kwikset*, 51 Cal. 4th at 323-27 (discussing standing under the FAL, CLRA, and UCL); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) (discussing standing under the CLRA). Standing under the FAL or CLRA requires a plaintiff to allege that he relied on the defendant's purported misrepresentation and suffered economic injury as a result. *Kwikset*, 51 Cal. 4th at 326 ("Proposition 64 requires that a plaintiff's economic injury come 'as a result of' . . . a violation of the false advertising law . . . . The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged

---

[2] Defendant also contends that plaintiff cannot pursue his UCL and FAL claims because they are claims for equitable relief and thus duplicate his legal claims that assert an adequate remedy at law. Mot. at 13-15. Plaintiff responds, *inter alia*, that he may plead alternative theories of recovery for the same conduct. Opp'n at 16-17. The Court agrees with plaintiff that questions about the appropriateness of specific remedies are premature at this stage of the litigation.

misrepresentation . . . . This commonsense reading of the language mirrors how we have interpreted the same language in . . . the Consumers Legal Remedies Act." (citations omitted)); *see also* Cal. Bus. & Prof. Code § 17535; Cal. Civ. Code § 1780(a). California courts have also extended this reliance requirement to claims under the unlawful prong of the UCL that are based, as here, on allegations of misrepresentation and deception. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010).

As the Ninth Circuit recently summarized:

> To establish standing to bring a claim under [the UCL, FAL, and CLRA], plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution. In a false advertising case, plaintiffs meet this requirement if they show that, by relying on a misrepresentation on a product label, they "paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so."

*Reid*, 780 F.3d at 958 (citations omitted).

Defendant argues that plaintiff cannot allege that he would not have purchased Crunch 'n Munch but for the "0g Trans Fat" claim because, according to defendant, plaintiff alleged in his original complaint and in other lawsuits that he "'did not discover' that 'trans fat is harmful to human health' until October 2018 (*see* Compl., ECF. 1, at ¶ 93) or even earlier in January 2017 . . . ." Mot. at 16. In other words, defendant argues that "if Plaintiff did not know about the purported potential dangers of trans fat when he purchased the products, as he alleges, then the amount of trans fat in Crunch 'n Munch® or the '0g Trans Fat' statement could not have been material to his purchasing decision." *Id.* at 16-17.

Defendant misreads plaintiff's allegations. In the FAC, plaintiff alleges that "Plaintiff first discovered ConAgra's unlawful acts around October 2018, when he learned that Crunch 'n Munch contained an unsafe food additive for years and was fraudulently marketed." FAC ¶ 62. He further states, "Plaintiff relied on ConAgra's '0g Trans Fat' claim as a substantial factor in some of his purchases of Crunch 'n Munch." *Id.* ¶ 64. "When purchasing Crunch 'n Munch, Plaintiff was seeking a product made with safe and lawful ingredients." *Id.* ¶ 84. "Plaintiff lost money when he purchased products that hurt his health and were unfairly sold [in] violation of federal and California law." *Id.* ¶ 85. "Plaintiff, on at least one occasion, would not have purchased Crunch 'n Munch

absent Defendant's 0g Trans Fat misrepresentation, and never would have purchased it had he known it was unlawful and dangerous." *Id.* ¶ 89. "Plaintiff did not discover that Defendant's behavior was unfair and unlawful and ConAgra's labeling was false, deceptive or misleading until around October 2018, when he learned that Crunch 'n Munch contained trans fat despite its explicit label claims." *Id.* ¶ 91.

Thus, defendant is incorrect that plaintiff has alleged that he did not discover the dangers of trans fat until October 2018. What plaintiff alleges is that he did not discover until October 2018 that Crunch 'n Munch contained trans fat. *See id.* ¶¶ 62, 91. Even if the Court were to look to plaintiff's original complaint, which is no longer the operative complaint in this case, the paragraph on which defendant relies does not state otherwise. That paragraph states:

> Plaintiff did not discover that Defendant's behavior was unfair and unlawful and ConAgra's labeling was false, deceptive or misleading until October 2018, when he learned that Crunch 'n Munch contained, despite its explicit label claim, trans fat, and that trans fat is harmful to human health in any quantity because it causes heart disease, diabetes, and cancer. Until that time, he lacked the knowledge regarding the facts of his claims against Defendant.

Docket No. 1 ¶ 93. Although it is perhaps confusingly worded, drawing all reasonable inferences in the plaintiff's favor, *see Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987), a fair reading of the complaint is that plaintiff learned Crunch 'n Munch contained trans fat in October 2018. This is consistent with his allegations elsewhere in the complaint. *See, e.g.,* Docket No. 1 ¶ 65 ("Plaintiff first discovered Defendant's unlawful acts described herein in October 2018, when he learned that Crunch 'n Munch contained an unsafe food additive for years and was fraudulently marketed.").[3]

In *Kroger*, the Ninth Circuit reversed a district court's dismissal of a plaintiff's UCL and FAL claims on statutory standing grounds. There, the plaintiff brought a similar suit regarding the

---

[3] The Court DENIES defendant's requests for judicial notice. *See* Docket Nos. 30-5, 38-2. Defendant seeks judicial notice of two of plaintiff's complaints in other cases as well as the comment that plaintiff's counsel filed with the FDA during its notice and comment period on PHOs. Although the Court may take judicial notice of matters of public record, it may not take judicial notice of facts in the public record that are subject to reasonable dispute. *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

12

United States District Court
Northern District of California

allegedly false labeling that Kroger Bread Crumbs contained "0g Trans Fat per serving." *See Kroger*, 906 F.3d at 767. The plaintiff alleged that she "relied on Defendant's '0g trans fat' claim as a substantial factor in her purchases" and that "Plaintiff, on at least one occasion, would not have purchased the Kroger Bread Crumbs absent Defendant's misrepresentation." *Id.* at 768-69. The appellate court explained that "the district court misread Hawkins's complaint" when it interpreted it "as alleging that she did not read the '0g Trans Fat per serving' product label until August 2015 . . . ." *Id.* at 769. The complaint in fact alleged, "Plaintiff first discovered Defendant's *unlawful acts* described herein in August 2015, when *she learned that Kroger Bread Crumbs contained artificial trans fat* . . . ." *Id.* (emphases added by appellate court). These allegations are similar to the ones plaintiff makes here, and for the same reasons articulated by the *Kroger* court, this Court finds plaintiff has statutory standing to bring his UCL, FAL, and CLRA claims.

### B. Rule 9(b)

Where, as here, a plaintiff's claims "are all grounded in fraud, the FAC must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Vess*, 317 F.3d at 1103-04 (explaining that even "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct," and in such cases, Rule 9(b)'s heightened pleading requirement must be met)). Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This means that "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (citation omitted).

Defendant argues in particular that plaintiff has failed to plead the "when" of the alleged fraud and thus has failed to comply with Rule 9(b). Mot. at 17-18. Defendant states that this "is

13

particularly problematic because, as Plaintiff himself concedes, Crunch 'n Munch® no longer contains PHO." *Id.* at 18 (citing FAC ¶ 69). Thus, if plaintiff purchased Crunch 'n Munch after it stopped containing PHO, plaintiff's claims would fail. Plaintiff does not dispute that Rule 9(b) applies to his claims, but he states that he has met the rule's requirements. He cites the following allegations from the FAC: that "[u]nless otherwise stated, references to Crunch 'n Munch only include Crunch 'n Munch during the period it contained PHO[;]" that plaintiff "regularly purchased Crunch 'n Munch during the Class Period[;]" and that the "Class" is defined as "All citizens of California who purchased in California, between January 1, 2010 and May 31, 2018, Crunch 'n Munch products containing partially hydrogenated oil." Opp'n at 21 (citing FAC ¶¶ 4, 60, 94). Plaintiff thus argues that he has stated with specificity when the fraud occurred.

The Court agrees with defendant. The present allegations are insufficient to allow defendant to "defend against the charge and not just deny that they have done anything wrong." *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). For two reasons, more specific information is needed regarding when plaintiff purchased Crunch 'n Munch. First, as defendant notes, if plaintiff purchased Crunch 'n Munch after the time when it stopped containing PHOs, he would have no claim. The present allegations, that plaintiff purchased the product at some time during an 8.5 year window, is insufficient to meet the requirements of Rule 9(b), particularly where the complaint lacks allegations regarding when Crunch 'n Munch discontinued using PHOs.[4] Second, as will be discussed below, some or all of plaintiff's purchases may fall outside the statute of limitations. The Court therefore DISMISSES Claims Three through Six, with leave to amend. Plaintiff must plead when he bought the PHO-containing Crunch 'n Munch with greater specificity in order that the Court may fairly evaluate the question of timeliness.

---

[4] The FAC is silent on when Crunch 'n Munch stopped containing PHOs. Plaintiff states in his opposition that "the proposed class period ends in mid-2018, which appears to be when the practice was discontinued." Opp'n at 21 (citing FAC ¶ 94). Elsewhere in his opposition brief, plaintiff states that "most of Plaintiff's purchases of Crunch 'n Munch occurred before Section 754 was passed." *Id.* at 11 (citing FAC ¶¶ 60-64, 91-92). However, the FAC does not say that. It says only that plaintiff "regularly purchased Crunch 'n Munch during the Class Period," *see* FAC ¶ 60, a roughly 8.5 year period that runs from January 2010 through May 2018. If this is plaintiff's position, he should include this allegation when amending his complaint.

14

**C. Timeliness**

Defendant simultaneously moves to dismiss the FAC as untimely. Mot. at 18-23. The operative statutes provide for three or four-year limitations periods for plaintiff's claims. *See* Cal. Code Civ. Proc. § 338(a) (three-year period for FAL); Cal. Civ. Code § 1783 (three-year period for CLRA); Cal. Bus. & Prof. Code § 17208 (four-year period for UCL); Cal. Com. Code § 2725 (four-year period for breach of warranty). Plaintiff filed his complaint on November 6, 2018, seeking relief for a class period that runs from January 1, 2010, through May 31, 2018. *See* Docket No. 1; FAC ¶ 94.

Plaintiff argues that he need not plead the timeliness of his claims because invoking the statute of limitations is an affirmative defense and that, in any event, he adequately pled that the doctrine of equitable tolling applies to his case. Opp'n at 17-19. He quotes from a recent consumer class action case decided by Judge Chen in this district, in which *the plaintiffs argued* "that 10 plaintiffs who did not plead a purchase date should not have their claims dismissed because '[s]tatute of limitations is . . . an affirmative defense that a plaintiff has no obligation to plead around in his or her complaint.'" *See id.* at 18 (quoting *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 886 (N.D. Cal. 2018) (quoting *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 961 (N.D. Cal. 2014))). In the very next sentence of his decision, Judge Chen went on to state, "However, this rule only applies when there is no 'statute-of-limitations problem apparent from the face of the complaint.'" *Sloan*, 287 F. Supp. 3d at 886 (quoting *MyFord Touch*, 46 F. Supp. 3d at 961). Judge Chen thus concluded it was appropriate to address the timeliness question at the motion to dismiss stage. *Id.* While ultimately the burden of proving that the action is time barred will fall to defendant, *see Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995), the Court likewise finds it appropriate at this stage to ensure that plaintiff at minimum has pled that his claims are timely.

Moreover, "California law makes clear that a plaintiff must allege specific facts establishing the applicability of the discovery-rule exception." *Id.* at 1407. Under California's delayed discovery rule, the statute of limitations does not begin to accrue "until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). To utilize the delayed discovery rule, "[a] plaintiff whose complaint shows on its face that his claim

15

would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id*. at 808 (quoting *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 151, 160 (1999)).

Here, plaintiff has pled the time of his discovery, but he has failed to plead the manner of the discovery or the inability to have made earlier discovery despite reasonable diligence. He states that he "first discovered ConAgra's unlawful acts around October 2018, when he learned that Crunch 'n Munch contained an unsafe food additive for years and was fraudulently marketed." FAC ¶ 62. In a section of his FAC entitled "Delayed Discovery," plaintiff further pleads as follows:

> 91. Plaintiff did not discover that Defendant's behavior was unfair and unlawful and ConAgra's labeling was false, deceptive or misleading until around October 2018, when he learned that Crunch 'n Munch contained trans fat despite its explicit label claim. Until that time, he lacked the knowledge regarding the facts of his claims against Defendant.
>
> 92. Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in his purchase, use, and consumption of Crunch 'n Munch. Nevertheless, he would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, he is not an expert on nutrition and does not typically read or have ready access to scholarly journals such as The Journal of Nutrition,[] The European Journal of Clinical Nutrition,[] and The New England Journal of Medicine,[] where the scientific evidence of artificial trans fat's dangers has been published. Furthermore, ConAgra's labeling practices—in particular, falsely representing for many years that Crunch 'n Munch has "0g Trans Fat"—actively impeded Plaintiff's and Class members' abilities to discover these claims.

*Id.* ¶¶ 91-92 (footnotes omitted). These allegations will not suffice to invoke the delayed discovery rule. Plaintiff alleges no facts regarding the manner in which he discovered that Crunch 'n Munch contained trans fat. Without this information, his statements that he could not have made his discovery sooner are nothing more than conclusory. If plaintiff wishes to continue to bring claims that fall outside the applicable statute of limitations by utilizing the delayed discovery rule, he must plead sufficient facts accordingly. Accordingly, in addition to the dismissal under Rule 9(b) discussed above, for the timeliness reasons discussed herein, the Court DISMISSES Claims Three through Six, with leave to amend.

Finally, defendant argues in a footnote that plaintiff's CLRA claim fails because plaintiff failed to file the requisite declaration of venue under California Civil Code section 1780(d) and

16

because plaintiff "failed to file and provide sufficient statutory notice before filing his original complaint." Mot. at 23 n.13. Defendant's motion regarding notice is DENIED. Plaintiff's original complaint did not state a claim under the CLRA, so he was not required to provide notice under California Civil Code section 1782 before filing that complaint. As to the declaration of venue, other judges in this district have dismissed without prejudice CLRA claims where the plaintiff has failed to file the requisite declaration under Civil Code section 1780(d). *See, e.g., In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011); *Hamm v. Mercedes-Benz USA, LLC*, No. 16-cv-03370-EJD, 2017 WL 4168573, at *3 (N.D. Cal. Sept. 20, 2017). In addition to the reasons stated above for dismissal of Claim Six, the Court DISMISSES Claim Six without prejudice for failure to file the affidavit of venue. Upon the filing of any Second Amended Complaint, if plaintiff continues to pursue his CLRA claim, he shall simultaneously file the affidavit of venue required by California Civil Code section 1780(d).

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to dismiss. Claims One and Two are dismissed with prejudice. Claims Three through Six are dismissed without prejudice. **Plaintiff's Second Amended Complaint shall be filed no later than April 1, 2019.** If plaintiff continues to bring a claim under the CLRA, the Second Amended Complaint shall be accompanied by the affidavit of venue required by California Civil Code section 1780(d).

**IT IS SO ORDERED**.

Dated: March 18, 2019

_____
SUSAN ILLSTON
United States District Judge